IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Criminal Action No. 1:21-cr-271 |
| | ) | Hon. T. S. Ellis, III |
| MOHAMMED KHALIFA, | ) | |
| | ) | |
| *Defendant*. | ) | Hearing: July 29, 2022 at 1:00 p.m. |

**<u>UNITED STATES' MEMORANDUM IN AID OF SENTENCING</u>**

*"By Allah, we are the harshest towards the kuffar, and the flames of war are only beginning to intensify.  By Allah, the fighting has just begun."*
- Mohammed Khalifa, narrating at 54:00 of *Flames of War: The Fighting Has Just Begun*, published by ISIS's al-Hayat Media Center on September 14, 2014.

*"For it is death that this young Khalifah lives.  Through death it remains forever victorious.  Until the final hour."*
- Mohammed Khalifa, narrating at 3:39 of *Flames of War: Until the Final Hour*, published by ISIS's al-Hayat Media Center on November 29, 2017.

## I.    INTRODUCTION

In order for terrorist organizations to expand and maintain influence, they must have the ability to recruit new members by spreading violent messages to active supporters and passive sympathizers.  Thus, the role of communication and propaganda becomes essential to the mission of terrorism: increase the frequency and intensity of violent events, promote anti-democratic values, instill fear, and divide populations and governments.  The Islamic State of Iraq and al-Sham, or ISIS, employed media and propaganda masterfully as part of its campaign of terror during the 2013-2018 time period.  The defendant served as one of the Islamic State's most prolific propagandists during the terrorist organization's surge.  Further, the defendant personally

engaged in extreme acts of violence to further the goals of ISIS, for instance: (1) he executed a kneeling Syrian soldier in 2014 by shooting him in the back of the head; and, (2) he executed a second kneeling Syrian soldier three years later in 2017, again shooting him in the back of the head. *See* PSR ¶¶ 26, 29.[1]  And when he had the opportunity to surrender to the Syrian Democratic Forces in Syria in 2019, the defendant threw multiple grenades and fired his AK-47 at Syrian soldiers to continue his murderous campaign on behalf of ISIS. *See* PSR ¶ 30.

A life term of imprisonment is, as we explain in greater detail below, a reasonable and appropriate punishment justified by the aggravated circumstances of the defendant's conduct and consistent with the statutory sentencing factors outlined in 18 U.S.C. § 3553(a).

## II.   SENTENCING GUIDELINES AND SENTENCING LAW

1. Guidelines

The U.S. Probation Office has determined that the defendant's total offense level is 43, his criminal history category is VI, and the advisory Guidelines range is Life imprisonment. *See* PSR ¶¶ 77, 78.  Offense level 43 is reached by applying application note two from Chapter 5 Part A of the U.S.S.G.  The government has no reason to dispute this Guidelines policy determination.  However, the government notes the stipulation of the parties to the following offense level guidelines calculation in the plea agreement in this matter:

| Guideline(s) | Description | Offense Level |
|---|---|---|
| U.S.S.G. §2A1.1 | First Degree Murder | 43 |
| U.S.S.G. §3A1.4 | Terrorism | +12 |

---

[1] The government offers Exhibits A and B in further support of this sentencing memorandum. Exhibit A is the video clip (3:34) from *Flames of War I* referenced in paragraph 26 of the PSR and paragraphs 15-16 of the Statement of Facts in this matter (Dkt. No. 37).  Exhibit B is the video clip (2:41) from *Flames of War II* referenced in paragraph 29 of the PSR and paragraph 19 of the Statement of Facts.  The government respectfully requests that the Court review these clips *in camera* in advance of sentencing.  Alternatively, the government requests leave to publish these video clips during the sentencing hearing.

| U.S.S.G. §3B1.1(b) | Aggravating Role | +3 |
| --- | --- | --- |
| | Total Offense Level | 58 |

*See* Dkt. No. 46; PSR at ¶4.

The final stipulated Guidelines calculation is properly calculated at offense level 55, criminal history category VI, after the defendant's three-level reduction for acceptance of responsibility is applied.  The Guidelines recommend a life term of imprisonment.  The government also asks the Court to fulfill other procedural sentencing requirements, including ordering payment of the $100.00 special assessment pursuant to 18 U.S.C. § 3013.

    2.  <u>Sentencing Law</u>

The standards governing sentencing are well-established.  In *United States v. Booker*, 543 U.S. 220 (2005), the Supreme Court rendered the United States Sentencing Commission, Guidelines Manual ("U.S.S.G." or the "Guidelines") purely advisory and emphasized that a sentencing court must consider both the Guidelines and the 18 U.S.C. § 3553(a) factors when making a sentencing decision.  *Id.* at 264; *see also United States v. Kimbrough*, 552 U.S. 85 (2007) (stating that "the Guidelines, formerly mandatory, now serve as one factor among several courts must consider in determining an appropriate sentence").  In *Gall v. United States*, 552 U.S. 38, 128 S. Ct. 586 (2007), the Supreme Court instructed that the sentencing court should calculate the sentencing Guidelines range, permit the government and the defendant "an opportunity to argue for whatever sentence they deem appropriate," consider all of the § 3553(a) factors, and finally pronounce a sentence taking into account all of the relevant factors.  *Id.* at 596-97.

III.   **A LIFE TERM OF IMPRISONMENT IS SUPPORTED BY THE STATUTORY SENTENCING FACTORS SET FORTH IN 18 U.S.C. § 3553(a).**

Substantive sentencing requires the Court to consider the relevant 3553(a) factors, which include: the nature and circumstances of the offense and the history and characteristics of the defendant; the need to promote respect for the law, provide just punishment for the offense, and afford adequate deterrence to criminal conduct; and the kinds of sentences and sentencing range established by the Guidelines.  The government respectfully submits that a life term of imprisonment is sufficient, and not greater than necessary, to satisfy the factors set forth in 18 U.S.C. § 3553(a).

The defendant's unique skill set and his unyielding commitment to the Islamic State's goal to control lands by force and intimidation for the purpose of terrorizing the West made him a formidable figure within ISIS.  The defendant's proficiency with the English language, intelligence and communication skills made him a valuable asset to the Islamic State's cause. The defendant's words beneath the caption of this pleading captures the defendant's commitment to promoting a radical jihadist ideology and its violent foundation.  Moreover, the defendant executed Syrian soldiers at the conclusion of these two propaganda videos.  *See* PSR ¶¶ 26, 29.

The defendant's material support to the Islamic State involved promoting and producing propaganda, committing murder, serving as a foreign fighter, and serving in a leadership role in the translation of official ISIS media content.  In this last role, the defendant directed various ISIS supporter networks for production and dissemination of ISIS media.  The defendant's role within the Islamic State's media operation cannot be understated.  The Islamic State's vast and coordinated media operation was central to its efforts at recruiting tens of thousands of foreigners to join its cause and inciting its members or followers to commit acts of violence.

4

Between 2011 and 2016, over 42,000 foreign fighters travelled to join ISIS from over 120 countries.  *See Mapping Militant Organizations. "The Islamic State." Stanford University.*  Last modified April 2021 (https://cisac.fsi.stanford.edu/mappingmilitants/profiles/islamic-state).  The volume and breadth of this recruitment effort is directly tied to the Islamic State's strategic use of its social media and propaganda to pursue its stated goals of remaining and expanding.

Stanford University's Center for International Security and Cooperation has chronicled the major attacks committed by the Islamic State.  Between 2014 and 2017, while this defendant was actively serving ISIS within Syria in a leadership role in its media bureau, the Islamic State committed the following attacks outside of Syria and Iraq, among others:

**October 22, 2014**: ISIS member Michael Zehaf-Bibeau opened fire at the Canadian National War Memorial, killing a Canadian solider.  He then stormed the Canadian parliament before being shot and killed by authorities.  ISIS claimed that the attack was a direct call to action.  Two people were killed and three wounded in this attack.

**November 13, 2015**: Eleven ISIS members killed 130 civilians and injured 100 more in a series of attacks in Paris, France.  Gunman and suicide bombers attacked a concert hall, a soccer stadium, restaurants, and bars in the French capital.  Within the days following the attack, nine of the ISIS operatives were killed.  One operative remained on the run until he was captured in Brussels on March 18, 2016.  According to French President François Hollande, the attacks were planned in Syria and organized in Belgium.

**January 14, 2016**: Five ISIS militants armed with suicide explosives and handguns attacked a Starbucks and a police station in Jakarta, Indonesia.  One Canadian civilian, one Indonesian civilian, and five attackers were killed, and an additional 23 were wounded.

**March 22, 2016**: Members of ISIS set off three nail bombs in Brussels, Belgium.  Two bombs were detonated in the Brussels Airport, and one bomb exploded in the Maalbek Metro Station.  In the two days following the bombings, European authorities arrested 11 ISIS militants that have been linked to this attack and the November 2015 attack in Paris, France.  Thirty-One were killed and 340 wounded in these attacks.

**May 23, 2017**: ISIS operative Salman Abedi detonated a bomb at a pop-music concert in Manchester, United Kingdom, killing 23 and wounding more than 250.

**August 17, 2017**: A van driver plowed through a crowded plaza in Barcelona, maiming dozens of pedestrians.  ISIS claimed responsibility, but it is unclear if the attack was

actually organized by ISIS or if it was inspired by the group's ideology.  It was Spain's deadliest terrorist attack in over a decade.  Thirteen were killed and 80 were wounded.

**October 31, 2017**: Sayfullo Habibullaevic Saipov, an Uzbek national with alleged ties to ISIS, drove a rented van through a crowded sidewalk in New York, maiming and killing more than a dozen individuals.  He left a note at the scene stating that the attack was carried out in the name of ISIS.  Eight were killed and 12 wounded in this attack.

In addition to the foregoing acts committed by ISIS members, the Islamic State also inspired two significant terrorist attacks within the United Sates in 2015 and 2016.  In December 2015, Syed Rizwan Farook and Tashfeen Malik attacked a government building in San Bernardino, California, killing 14 and seriously wounding 22 others.  In testimony before the Senate Judiciary Committee soon after the attack, the Director of the FBI stated that the couple had been communicating with each other about *jihad* and had been "consuming poison on the internet."  On June 12, 2016, Omar Mateen killed 49 people and wounded 53 others in a mass shooting at the Pulse nightclub in Orlando, Florida.  Mateen swore allegiance to then-ISIS leader Abu Bakr al-Baghdadi in a call to the police shortly after he began his attack.

The Paris, San Bernardino, and Orlando attacks are all referenced in *Flames of War: Until the Final Hour*, narrated by the defendant and released by the Islamic State on November 29, 2017.  *See* PSR ¶ 27.  Further, the defendant served as a broadcaster for Bayan Broadcasting, the Islamic State's version of a national broadcast outlet.  The defendant narrated the Bayan Broadcasting reporting of the Islamic State accepting responsibility for the Orlando and San Bernadino mass killings.  For the Orlando atrocity, the defendant called the killer Omar Mateen "our brother" and the victims "filthy crusaders."  The defendant also boasted that "the operation was reported as being the most deadly attack in America" since the September 11, 2001 attacks.

The defendant's commitment to violence and the lethal terrorist organization he proudly served for over five years continued unabated until his capture.  In January 2019, the defendant

6

left media operations and elected to engage in fighting.  He attacked a Syrian Democratic Forces (SDF) position in Abu Badran, Syria.  The defendant, alone and armed with three grenades and an AK-47, threw a grenade on the roof of a house where SDF soldiers were standing.  The grenade detonated and the defendant ran into the house and attempted to go to the roof, but an SDF soldier was firing from the stairs.  The defendant began firing at the SDF soldier and attempted to use all three of his grenades during the attack.  The defendant fired most of his ammunition before his AK-47 jammed and he was unable to clear his weapon.  He was captured by the SDF on or about January 13, 2019.  *See* PSR ¶ 30.  Until the very end, this defendant sought to continue his murderous campaign on behalf of the Islamic State.

As the foregoing amply demonstrates, the nature and circumstances of the defendant's conduct are highly aggravated and provide sufficient support for a life term of imprisonment.  In determining a just sentence, the government submits that the defendant executed two individuals, glorified the killing of dozens more, and served within ISIS as a prominent figure for over five years, all outweighing any mitigation available to the defendant and justifying a life term of imprisonment.  Finally, the judgment to impose a life term of imprisonment is buttressed by the advisory Guidelines calculation, which in this case result in the highest possible level and criminal history category and recommend a life term of imprisonment.

## IV.  CONCLUSION

The conduct of the defendant established by this prosecution amply demonstrates the existential threat the Islamic State posed to the West.  The Islamic State's coordinated and purposeful effort to distribute violent propaganda through its social media ecosystem revolutionized terrorism recruitment by falsely glorifying the rationale of the terrorist organization.  The public should not be misled to understand that the conduct of the defendant or

any other member of the Islamic State was rooted in warfare or other geopolitical conflict. The defendant served in a leadership position within the Islamic State, where he and the terrorist organization engaged in a prolonged pattern of grotesque and violent activity.

For these reasons, the defendant has earned a life term of imprisonment from this Court. A life sentence reflects the seriousness of the offense and provides a just sentence. 18 U.S.C. § 3553(a)(2)(A). The government respectfully submits that a life term of imprisonment is sufficient, and not greater than necessary, to satisfy the factors set forth in 18 U.S.C. § 3553(a).

Respectfully submitted,

Jessica D. Aber
United States Attorney

By:      /s/
Dennis M. Fitzpatrick
Raj Parekh, First Assistant U.S. Attorney
John T. Gibbs
Aidan Taft Grano-Mickelsen
Assistant United States Attorneys
Eastern District of Virginia
Alicia Cook, Trial Attorney
2100 Jamieson Avenue
Alexandria, VA 22314

## CERTIFICATE OF SERVICE

I hereby certify that on July 22, 2022, I filed the foregoing with the Clerk of Court using the CM/ECF system, which will send an electronic copy to all counsel of record in this matter.

By:      /s/
Dennis M. Fitzpatrick
Assistant United States Attorney
Eastern District of Virginia
United States Attorney's Office
2100 Jamieson Avenue
Alexandria, Virginia 22314
Phone: 703-299-3700